**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLANTIC SHORE SURGICAL ASSOCIATES, P.C., <br><br> Plaintiff, <br><br> v. <br><br> UNITEDHEALTH GROUP, INC, *et al.*, <br><br> Defendants. | Civil Action No. 23-2359 (MAS) (RLS) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff Atlantic Shore Surgical Associates, P.C.'s ("Plaintiff") Renewed Motion to Remand and request for Attorneys' Fees. (ECF No. 62.) Defendants[1] opposed (ECF No. 66), and Plaintiff replied (ECF No. 70). Also before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 63), to which Plaintiff opposed (ECF No. 69), and Defendants replied (ECF No. 71).

The Court has considered the parties' arguments and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Plaintiff's Renewed Motion to Remand is granted, Plaintiff's request for attorneys' fees is denied, and Defendants' Motion to Dismiss is denied as moot.

---

[1] "Defendants" or "United" collectively refers to UnitedHealth Group, Inc. ("UHG"), AmeriChoice of New Jersey, Inc. ("AmeriChoice"), Oxford Health Insurance, Inc. ("Oxford"), Oxford Health Plans (NJ), Inc. ("Oxford-NJ"), UMR, Inc. ("UMR"), United Healthcare Services, Inc. ("UHS"), and United HealthCare Insurance Company ("UHIC"). (*See* Compl., ECF No. 1.)

I.   **BACKGROUND**

A.   **Statement of Facts**

This dispute is between an out-of-network healthcare provider and an insurance company. (*See generally* Second Am. Compl., ECF No. 61.) Plaintiff is a New Jersey-based surgical treatment center. (*Id.* ¶ 1.) United consists of UHG, a national health insurance company based in Delaware, and its subsidiaries, who collectively underwrite and administer health insurance plans for United Subscribers[2]. (*See id.* ¶¶ 3-9.) Plaintiff is an "out-of-network" provider for United, meaning it "do[es] not have contracts with [United] to accept discounted rates and instead set[s] [its] own fees for services based on a percentage of charges." (*Id.* ¶ 19.) At the core of this dispute, Plaintiff charged United a total of $2,404,430.51 for performing 55 surgeries on 44 United subscribers, but United only paid Plaintiff $125,362.90 of Plaintiff's total charges. (*Id.* ¶¶ 52-53, 55.)

Plaintiff provides both "emergency and elective surgical treatment" to thousands of residents throughout New Jersey. (*Id.* ¶ 13.) Plaintiff's surgeons "serve as the on-call surgeons at various hospitals in central New Jersey," meaning they are "often called upon to provide emergency general and bariatric surgery to patients who present to these hospitals' emergency departments and whose medi[c]al conditions require emergency surgery." (*Id.* ¶¶ 14-15.) Although Plaintiff is an out-of-network provider for United, Plaintiff alleges that "United Subscribers regularly seek and receive emergency surgeries and other services from Plaintiff's physicians at the hospital emergency departments where they are on-call[,]" and that "federal and New Jersey

---

[2] "United Subscribers" are "patients [who are] covered by health insurance plans insured or administered by [United]." (Second Am. Compl. ¶ 2.)

law obligate Plaintiff's physicians . . . to provide treatment to all patients who present at emergency departments," notwithstanding whether or not those patients have insurance. (*Id.* ¶ 20.)

Plaintiff also claims that "United explicitly instructs and encourages its Subscribers to seek and obtain emergency medical treatment from providers such as Plaintiff who are not 'in-network' and are not 'participating' providers." (*Id.* ¶ 30.) Between Plaintiff's inability to choose some of its patients, United encouraging its subscribers to seek treatment from Plaintiff, and New Jersey's statutory requirements for prompt insurance payments (*see id.* ¶¶ 33-38), emergency coverage (*see id.* ¶¶ 39-40), and out-of-network consumer protections (*id.* ¶¶ 41-46), Plaintiff alleges that United has an implied obligation "to pay Plaintiff a reasonable rate for the emergency services that Plaintiff provided to United Subscribers." (*Id.* ¶ 32).

In a similar vein, Plaintiff claims that United Subscribers "routinely seek and obtain out-of-network non-emergency surgeries from [Plaintiff]." (*Id.* ¶ 47.) For non-emergency surgeries, Plaintiff "seeks and obtains 'preauthorization'" from United before performing a procedure. (*Id.* ¶ 48.) "Preauthorization is the approval that a health care provider obtains from United to provide a designated service before the service is rendered." (*Id.*) But Plaintiff alleges that in some cases, "United represents . . . that no preauthorization is necessary." (*Id.* ¶ 50.) Based upon "United's representations to [Plaintiff], either in preauthorizing the specific services to be provided to a United Subscriber, or in advising [Plaintiff] that no preauthorization is needed, [Plaintiff] proceeds with the procedure." (*Id.* ¶ 51.)

In other words, for emergency surgeries, Plaintiff contends that United has an implied obligation and/or contract to pay "Plaintiff a reasonable rate for the emergency services that Plaintiff provided to United Subscribers." (*Id.* ¶ 32). For non-emergency surgeries, and in some

3

instances, emergency surgeries, Plaintiff argues that it relied on United's representations regarding preauthorization before conducting procedures on United Patients. (*Id.* ¶ 51.)

In sum, Plaintiff's "total charges for the 55 surgeries at issue . . . were $2,404,430.51 . . . [which allegedly] represent[s] the fair value of the surgeries and other services provided to the United Subscribers." (*Id.* ¶ 53.) United, however, allegedly "paid [Plaintiff] only $125,362.90, or a mere 5.2% of Atlantic Shore's total charges, for [the] 55 surgeries [at issue]." (*Id.* ¶ 55.) As such, Plaintiff alleges that "United underpaid [Plaintiff] for these . . . surgeries in the total amount of $2,279,067.61." (*Id.*)

### B.     Procedural History

Plaintiff commenced this lawsuit on March 15, 2023, in the Superior Court of New Jersey, Ocean County. (*See* Civil Case Information Statement, ECF No. 1-1.) United removed the action to this Court on April 28, 2023, asserting that the "Complaint falls squarely within ERISA's 'complete preemption' doctrine and is therefore removable to federal court." (*See* Notice of Removal ¶ 4, ECF No. 1.) Plaintiff amended the Complaint on July 7, 2023 and October 16, 2023, respectively. (*See* Am. Compl., ECF No. 44; Second Am. Compl.) The Second Amended Complaint asserts the following claims: (1) breach of implied contract; (2) breach of the covenants of good faith and fair dealing; (3) quantum meruit; (4) promissory estoppel; (5) negligent misrepresentation; and (6) violations of the New Jersey Health Claims Authorization, Processing and Payment Act ("HCAPPA"). (*See* Second Am. Compl. at 21-32.)

Pending before the Court is Plaintiff's Renewed Motion to Remand[3] this matter to the Superior Court of New Jersey, Ocean County, and request for attorneys' fees. (*See* Pl.'s Mot. Remand, ECF No. 62.) United opposed (*see* Defs.' Opp'n to Mot. Remand, ECF No. 66), and Plaintiff replied (Pl.'s Reply, ECF No. 70). On November 15, 2023, United also moved to dismiss the Second Amended Complaint. (Defs.' Mot. Dismiss, ECF No. 63.) Plaintiff opposed this motion (Pl.'s Opp'n to Mot. Dismiss., ECF No. 69), and United replied (Defs.' Reply, ECF No. 71).

## II.     **LEGAL STANDARD**

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). To hear a case, a federal court must have jurisdiction over the issue, such as diversity or federal question jurisdiction. *See In re Morrissey*, 717 F.2d 100, 102 (3d Cir. 1983). 28 U.S.C. § 1441, the federal removal statute, provides that unless "otherwise expressly provided by . . . Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A plaintiff can move to remand a case removed to a federal court where the court lacks subject matter jurisdiction or removal was otherwise improper. *Id.* § 1447(c).

The removal statute is to be "strictly construed against removal." *Samuel-Basset v. Kia Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004) (citation omitted); *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1995) ("Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should

---

[3] Plaintiff filed its initial motion to remand in May 2023. (ECF No. 27.) The Hon. Rukhsanah L. Singh, U.S.M.J., granted the parties an opportunity to engage in limited discovery before ruling on the initial motion to remand. (*Id.*) Following limited discovery, Plaintiff re-filed the instant motion to remand on October 23, 2023. (Pl.'s Mot. Remand.)

be strictly construed and all doubts should be resolved in favor of remand." (citation omitted)). Indeed, "[f]ederal courts are presumed not to have jurisdiction without affirmative evidence of this fact." *Nuveen Mun. Tr. v. WithumSmith Brown, P.C.*, 692 F.3d 283, 293 (3d Cir. 2012) (citation omitted). A district court must therefore remand a case that was removed if "at any time before final judgment it appears the district court lacks subject matter jurisdiction[.]" 28 U.S.C. § 1447(c). To defeat a motion to remand, a defendant bears the burden of demonstrating the federal court's jurisdiction. *Abels*, 770 F.2d at 29 (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)).

## III.  DISCUSSION

### A.  Renewed Motion to Remand

The sole basis United asserts for removal is that "[Plaintiff's] claims are completely preempted by ERISA[.]" (Notice of Removal ¶ 29.) Because jurisdiction over this action hinges on the doctrine of ERISA complete preemption, the Court turns to whether that doctrine subsumes Plaintiff's claims.

#### i.  *ERISA Complete Preemption*

"Under the well-pleaded complaint rule, a cause of action 'arises under' federal law, and removal is proper, only if a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 353 (3d Cir. 1995) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9-12 (1983)). There is, however, a "narrow exception to the well-pleaded complaint rule for instances where Congress has expressed its intent to 'completely pre-empt' a particular area of law such that any claim that falls within this area is 'necessarily federal in character.'" *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)). The Supreme Court has recognized that complete preemption applies to § 502(a) of ERISA. *N.J. Carpenters & Trs. Thereof*

v. *Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014) (citing *Metro. Life Ins. Co.*, 481 U.S. at 62-63).

ERISA § 502 completely preempts a claim only if: (1) "the plaintiff could have brought the claim under § 502(a)"; and (2) "no other independent legal duty supports the plaintiff's claim." *Id.* at 303 (citing *Pascack Valley Hosp. Inc. v. Loc. 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004)). This analysis, generally referred to as the "*Pascack Valley* test", is "conjunctive, and a state-law cause of action is completely preempted *only when both prongs of the test are satisfied.*" *N. Jersey Brain & Spine Ctr. v. MultiPlan, Inc.*, No. 17-5967, 2018 WL 6592956, at *4 (D.N.J. Dec. 14, 2018) (emphasis added) (quoting *N.J. Carpenters*, 760 F.3d at 303). As the removing party in this case, United "bears the burden of establishing [that] both prongs" are met. *Progressive Spine & Orthopaedics, LLC v. Anthem Blue Cross Blue Shield*, No. 17-536, 2017 WL 4011203, at *5 (D.N.J. Sept. 11, 2017) (citing *Pascack*, 388 F.3d at 400). To determine whether § 502 preempts a cause of action, "the Court may examine the complaint, the statutes on which the claims are based, and the relevant plan documents." *N. Jersey Brain & Spine Ctr.*, 2018 WL 6592956, at *4 (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004)).

   ii. *The Pascack Valley Test*

The *Pascack Valley* test is comprised of two prongs—which, as stated, must both be satisfied for complete preemption to apply. Under the first prong of the *Pascack Valley* test, the court looks at (1) "whether the plaintiff is the *type* of party that can bring a [§ 502(a)] claim"; and (2) "whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for

benefits pursuant to [§ 502(a)]."[4] *Progressive Spine*, 2017 WL 4011203, at *5 (quoting *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 328 (2d Cir. 2011)). Under the second prong, "a legal duty is 'independent' if it is not based on an obligation under an ERISA plan, or if it 'would exist whether or not an ERISA plan existed.'" *N.J. Carpenters*, 760 F.3d at 303 (quoting *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 950 (9th Cir. 2009)). "In other words, if the state law claim is not 'derived from, or conditioned upon' the terms of an ERISA plan, and '[n]obody needs to interpret the plan to determine whether that duty exists,' then the duty is independent." *Id.* (quoting *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 614 (6th Cir. 2013)).

    iii.  *Pascack Valley Prong One*

    a.  **Type of Party**

The first prong of the *Pascack Valley* test, i.e., whether the plaintiff could have brought the action under § 502(a), requires this Court to resolve two issues. The first issue is "[w]hether the plaintiff is the *type* of party that can bring a claim pursuant to § 502(a)(1)(B)[.]" *Progressive Spine*, 2017 WL 4011203, at *5. ERISA § 502(a) allows only "a participant or beneficiary" to bring an action to recover benefits. *Id.* (quoting 29 U.S.C. § 1132(a)). But third-party healthcare providers

---

[4] United argues that the Court should limit the first prong of the *Pascack Valley* test solely to "whether 'an individual, at some point in time, could have brought [the] claim under Section 502(a)'" (Defs.' Opp'n to Mot. Remand 20 (quoting *Davila*, 542 U.S. at 210)) because "[n]either the Supreme Court nor the Third Circuit has sub-divided Prong 1." (*Id.* at 19-20). This is unpersuasive. Individuals can only bring a § 502 claim if they have standing, and if they state a colorable claim for benefits. *See Franchise Tax Bd.*, 463 U.S. at 27 ("ERISA carefully enumerates the parties entitled to seek relief under § 502[.]"); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989) ("[A] claimant must have a colorable claim that . . . he or she will prevail in a suit for benefits[.]"). Both considerations require this Court's attention, and courts within this District regularly address them individually. *See, e.g.*, *MedWell, LLC v. Cigna Corp.*, No. 20-10627, 2020 WL 7090745, at *3 (D.N.J. Dec. 4, 2020); *Progressive Spine*, 2017 WL 4011203, at *5; *N. Jersey Brain & Spine Ctr.*, 2018 WL 6592956, at *6. United does not explain why this Court should depart from this well-established practice, so it disregards United's argument.

"that are neither participants nor beneficiaries in their own right may obtain derivative standing by assignment from a plan participant or beneficiary." *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015) (citation omitted). That said, anti-assignment clauses contained within health insurance contracts "as a general matter are enforceable." *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018).

Here, the current litigation involves forty-four patients. (*See* Pl.'s Mot. Remand 12-13.) Plaintiff contends that it has derivative standing for only eleven patients (*id.*), while United claims that Plaintiff has derivative standing for twenty-seven patients (*see* Defs.' Opp'n to Mot. Remand 14-18). Simply put, both parties agree that Plaintiff has standing to bring at least *some* § 502(a) claims. The exact number of patients that United may have derivative standing for does not bear on the ultimate outcome, however, because as detailed below, Plaintiff does not state any colorable claims for benefits under § 502.

                                                  **b.**      **Colorable Claim for Benefits**

Assuming that this Court were to find that Plaintiff has standing to bring an ERISA claim under § 502, it is well established that this fact alone "does not convert a state-law cause of action into a federal claim." *Atl. Shore Surgical Assocs., PC v. Aetna Life Ins. Co.*, No. 20-15622, 2021 WL 1381256, at *9 (D.N.J. Apr. 12, 2021) (citation omitted). Indeed, even if a plaintiff has "received a valid assignment and could have filed under ERISA, the mere existence of an assignment does not convert [the plaintiff's] state law' claims into an ERISA claim for benefits." *Id.* (quoting *Atlantic Shore Surgical Assocs. v. Local 464*, No. 17-12166, 2018 WL 3611074, at *3 (D.N.J. Jul. 27, 2018)). To be considered is "whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to [§] 502(a)(1)(B)." *Progressive Spine*, 2017 WL 4011203, at *5.

9

ERISA generally does not preempt claims that do not "challenge the type, scope or provision of benefits under [the terms of an ERISA] healthcare plan." *N. Jersey Brain & Spine Ctr. v. United Healthcare Ins. Co.*, No. 18-15631, 2019 WL 6317390, at *5 (D.N.J. Nov. 25, 2019), *report and recommendation adopted*, 2019 WL 6721652 (D.N.J. Dec. 10, 2019) (citation omitted). Preemption does not apply where a "right to recovery, if it exists, depends entirely on the operation of third-party contracts . . . independent of [an ERISA plan]." *Pascack Valley Hosp.*, 388 F.3d at 402; *see also Emergency Physicians of St. Clare's*, 2014 WL 7404563, at *5 ("ERISA does not, however, preempt claims over the *amount* of coverage provided, which includes disputes over reimbursement.") (emphasis in original); *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 177-178 (3d Cir. 2014) (noting the "key" distinction for ERISA preemption is whether the claims in question are "seeking *coverage* under a benefit plan" or if the claims are "seeking *reimbursement* for coverage provided.") (second emphasis in original). "[A] provider may bring a contract action for an insurer's failure to reimburse the provider pursuant to the terms of the agreement, while a claim seeking coverage of a service may only be brought under ERISA." *CardioNet*, 751 F.3d at 178 (citing *Pascack Valley*, 388 F.3d at 403-04).

Accordingly, healthcare providers may bring reimbursement claims against insurers based on a contract between the provider and the insurer that is *independent* of an ERISA plan. *Compare MHA, LLC v. Empire Healthchoice HMO, Inc.*, No. 17-6391, 2018 WL 549641, at *3 (D.N.J. Jan. 25, 2018) ("[Plaintiff] seeks to assert rights as a third-party provider for payment. Disputes over the amount of reimbursement are not preempted by ERISA.") *with MedWell*, 2020 WL 7090745, at *4 (holding that ERISA preempted healthcare provider's claim brought "on behalf of patients/beneficiaries[.]").

10

None of Plaintiff's causes of action[5] "challenge the type, scope or provision of benefits" under an ERISA plan. *N. Jersey Brain & Spine Ctr.*, 2019 WL 6317390, at *5. Specifically, Counts One, Two, and Three of the Second Amended Complaint are all predicated on United's failure to reimburse Plaintiff for the value of emergency medical services that Plaintiff provided to United's Subscribers. (Second Am. Compl. ¶¶ 59-86.) The state law claims under Counts Four and Five pertain to United's failure to uphold its representations that Plaintiff would receive a reasonable payment for Plaintiff's services. (*Id.* ¶¶ 87-101.) And Plaintiff's claim under Count Six against United via the HCAPPA arises from United's alleged statutory obligations—independent of ERISA—to reimburse Plaintiff for its out-of-network emergency services. (*Id.* ¶¶ 102-09.) The Court agrees with Plaintiff that these claims relate to the *amount of payment* Plaintiff received—they do not relate to Plaintiff's *right to payment* under an ERISA plan or coverage under an ERISA plan. (Pl.'s Mot. Remand 16-17.)

In short, Plaintiff seeks reimbursement from United based on state law, and the parties' alleged course of dealing and implied contractual relationship. This Court has made clear that ERISA does not preempt these claims. *See Royal Heritage Home, LLC v. Bluestone*, No. 20-4157, 2021 WL 3630300, at *5 (D.N.J. Aug. 17, 2021) ("[The p]laintiff does not claim entitlement to rights, benefits, or anything else under the terms of the [p]lan. Rather, [p]laintiff seeks relief based on the misrepresentations allegedly made by [d]efendant before the [p]lan existed and pursuant to a contractual relationship that allegedly existed between the parties at that time."); *Atl. Shore*

---

[5] As stated, *supra*, Plaintiff brings six causes of action, alleging that: (1) United breached an implied contract with Plaintiff; (2) in breaching that implied contract, United also breached the covenant of good faith and fair dealing; (3) United had an equitable obligation to reimburse Plaintiff; (4) Plaintiff detrimentally relied on United's conduct in providing care to United subscribers; (5) United negligently misrepresented that it would pay Plaintiff the right amount; and (6) United's conduct violated New Jersey law requiring prompt insurance payments. (*See generally* Second Am. Compl.)

*Surgical Assocs.*, 2021 WL 1381256, at *9 ("[The plaintiff] is asserting rights pursuant to an implied-in-fact contract between itself and the [insurer] [d]efendants, wholly separate from the [ERISA] plans. . . . [plaintiff's] claims are not the types of claims that are colorable under § 502(a)."); *Atl. ER Physicians Team, Pediatrics Assoc., PA v. UnitedHealth Grp., Inc.*, No. 20-20083, 2021 WL 4473117, at *4 (D.N.J. Sept. 30, 2021) ("[The p]laintiffs' claims are related to payments received premised on implied agreements and representations arising in the course of the parties' dealings. For these reasons, [d]efendants have failed to meet their burden to show that the [p]laintiffs have standing to bring an ERISA claim under Section 502(a)."); *N. Jersey Brain & Spine Ctr.*, 2019 WL 6317390, at *5 ("[B]reach of implied contract, breach of the covenant of good faith and fair dealing, unjust enrichment and quantum meruit, promissory estoppel, negligent misrepresentation, tortious interference with economic advantage, and New Jersey statutory claims are not colorable claims for benefits under an ERISA plan.").

Considering the abundance of case law on this issue, the Court finds that Plaintiff does not state colorable claims for benefits under § 502 of ERISA and cannot meet the first prong of the *Pascack Valley* test.[6] *Atl. ER Physicians Team Pediatric Assocs.*, 2022 WL 950815, at *4 (noting that "federal district courts in New Jersey, Pennsylvania, Nevada, Arizona, Florida, and perhaps elsewhere have denied [United's] arguments for ERISA preemption."). As described above, the *Pascack Valley* test is conjunctive—complete preemption applies only if a claim satisfies both

---

[6] United argues that Plaintiff states a colorable claim for benefits because the patients at issue undisputedly were participants in ERISA Plans. (Defs.' Opp'n Mot. to Remand 20.) This consideration is not dispositive. As explained above, a colorable claim for benefits exists if Plaintiff challenges the type, scope or provision of benefits under an ERISA plan. *See supra* pp. 9-11. This inquiry does not depend on whether some or all of the patients at issue participated in an ERISA plan. *See Atl. Shore Surgical Assocs.*, 2021 WL 1381256, at *9 ("[The plaintiff] is asserting rights pursuant to an implied-in-fact contract between itself and the [Insurer] [d]efendants, wholly separate from the [ERISA] plans.").

prongs. *See N. Jersey Brain & Spine Ctr.*, 2018 WL 6592956, at *4 (citing *N.J. Carpenters*, 760 F.3d at 303). Given that Plaintiff's claims fail on *Pascack Valley's* first prong, the Court need not venture into the second prong. And because ERISA does not completely preempt Plaintiff's claims, it follows that the Court lacks subject matter jurisdiction over the action and must grant Plaintiff's motion to remand. United's motion to dismiss is therefore denied as moot.

**B.     Plaintiff's Request for Attorneys' Fees**

In moving to remand, Plaintiff also requests attorneys' fees pursuant to 28 U.S.C. § 1447(c). (*See* Pl.'s Mot. Remand 21-23.) Under § 1447(c), the Court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." A court may award costs and attorney's fees if the removing party lacked an objectively reasonable basis for seeking removal. *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).

Plaintiff contends that attorneys' fees are appropriate as United lacked an objectively reasonable basis for removal because "courts within this District have rejected health insurers' repeated efforts to invoke complete preemption as a basis for removing claims by health care providers, such as Plaintiff's claims here[.]" (Pl.'s Mot. Remand 21.) Plaintiff lends support from a similar proceeding in this District where United was a party, and where the court "cautioned United that, should they 'argue for federal subject matter jurisdiction in the future based on ERISA preemption, they must disclose to the court the caselaw that cuts against their legal arguments[,]'" or face attorneys' fees and sanctions. (*Id.* at 22 (quoting *Atl. ER Physicians Team Pediatric Assocs.*, 2022 WL 950815, at *4).)

Having considered the parties' arguments, the Court finds an award of attorneys' fees inappropriate. In seeking removal, United noted there to be adverse caselaw from this District where courts denied their and other similarly situated insurers' arguments for ERISA preemption

(*see* Notice of Removal 14 nn. 7-12), but argued that those cases are distinguishable (*id.* 14-16). While the Court need not discuss the merits of United's attempts to distinguish this caselaw, the Court finds that United's arguments are colorable *enough* to provide an objectively reasonable basis for removal. To the extent, however, that United continues to seek removal in cases involving similar facts to those presented here, the Court does not rule out the possibility of sanctions in such future cases. The Court therefore denies Plaintiff's request for attorneys' fees.

## IV.     CONCLUSION

For the reasons stated above, the Court grants Plaintiff's Motion to Remand, denies Plaintiff's Request for Attorneys' Fees, and denies United's Motion to Dismiss as moot. An appropriate order will follow.

_____<br>
MICHAEL A. SHIPP<br>
UNITED STATES DISTRICT JUDGE